I was just thinking about the Thanksgiving holiday coming up and I looked at it and I saw that you guys don't get Friday off, which I think is unfair. Thank you. Maybe you guys ought to make a push to have that called Abraham Lincoln Day because he's the one that instituted it. We don't have a separate holiday for Abraham Lincoln. We do have for George Washington because it's really not President's Day. If you look at the federal statute, it's George Washington's birthday. All right. Well, this motion is granted, so. So I'm making a push for that. We'll see you later. Anyway, okay. I'd like to thank the Court for allowing me to present my oral arguments. I represent the defendant's appellants in this matter. Crawley's due process claim is barred by Heck because Crawley identified the supposedly good time credits as his deprived liberty interest, and Heck bars a claim which would necessarily imply the invalidity of Crawley's sentence, which includes the invalidity of the deprivation of good time credits. This is the first time we're seeing this is in the reply brief? Yes, Your Honor. That's correct.  So how is this not — how is this properly considered at this point? Well, Your Honor, that case would be the Hebron case. That's exactly what happened in Hebron. In fact, at least I'm a little bit ahead of the defendants in Hebron because Hebron didn't raise — the defendants in Hebron didn't raise it at all. It was the district court that actually raised the case. But the court in Hebron went forward and said, hey, under the PLRA, these things can be raised at any time, and that the court has a sua sponte obligation to raise these things when he sees that it would necessarily — that the case necessarily would be required to be dismissed. And that's exactly what we have here. For the first time in their answering brief, they first time said that, hey, he is being deprived not just of good time credits, but good time credits that affect the length of his sentence. And so, heck, heck applies. And I don't know how we overcome that because in Hebron it talked about this forfeiture issue. And it's the Edwards case that's directly on point. And even though, you know, they tried to distinguish it using Judge Ginsburg's concurrence, which she's not in the majority opinion, I don't think that you can say — you can go and say, okay, well, go back and look forward and say, hey, well, we can change our interpretation now, but you can't because you have Hebron. But, you know, one thing here that's a little different than Hebron is that your clients went — you had a state court proceeding that was also pending, and seemingly you used this Federal case to get that case dismissed. So under those circumstances, why is not — why is that not a waiver of the HECBAR? Well, because, Your Honor, because the thing is, is that that case would have been HECBAR-ed, too, I mean, if it went forward. The reason why — what he's doing is he's coming forward and saying, hey, because I filed a claim that I shouldn't have filed because it was already in Federal court, then somehow that makes us have a waiver of an issue that was never raised in the state district court. And I don't know how you get to that point. But I think the difference here, I mean, in Hebron, you — the question was it was failure to raise an affirmative defense, and the district court raised, heck, here we don't have anything. Why isn't that different? Because — because the PLRA says it can be raised at any time. And in the — there's a — which is a case — sorry, I don't — the case name escapes me. But this Court itself has applied the PLRA for the first time in this Court, and therefore it's cited in my briefs. And so for the very first time that you can — you're — you have the same obligation the district court has. It's — there's not a difference of a time. So it says for the first time, and here it's clear that this is on all fours on — under Hebron. You know, I want to go on to continue, because this is the — this is the thing about this case, okay, with respect to the liberty interest, because, of course, you have to have a — be deprived of liberty interests. That's — you can't — you can't have a 14th Amendment claim unless you're deprived of life, liberty, or property. That's the — that's from the very statute of the amendment. Right, Your Honors? And so if — he's got one — he's got two — he's got two things. Either one, okay, it didn't shorten his sentence, right? If it didn't shorten his sentence — I mean, didn't lengthen — sorry, didn't lengthen his sentence, okay? If it didn't lengthen his sentence, well, then heck doesn't apply, right? Because it wasn't. But if it doesn't, he doesn't have a liberty interest in it. Because under Nevada law, it is clear that unless it affects the sentence, the length of the sentence, there's no — there's no liberty interest in being provided parole early. And so — so he's — he's — he's in two spots. So it's either one or the other, Your Honors. Either he doesn't have a liberty interest, and therefore there's no due process violation, or if he does have a liberty interest, it's barred by heck. Crowley did not violate the due process rights because he was properly — he was properly disciplined for smuggling drugs into prison. Because they failed to establish that he was deprived of anything, okay? Those are good time credits. I want to also talk about the officers, because they also — you've got to have personal participation. Again, the statute says you've got to deprive somebody. So if the person they're suing didn't deprive them of anything, but this were part of the process, they did not violate the 14th Amendment. The Supreme Court has repeatedly held that you can't violate the 14th Amendment just by not giving procedures. You've got to deprive them of something. And so you have a bunch of defendants. You have Officer Sway, who didn't participate at all in the first disciplinary hearing. You have Senior Officer Holloway, Sergeant Robinson, Deputy Director Williams, who all did not appear in either disciplinary hearing. And so they did not deprive him of anything. And so if they did not deprive him of anything, they cannot violate the 14th Amendment. The members of the disciplinary committee provided all the due process required, even though Crowley was not deprived of a liberty interest provided by the 14th Amendment. Crowley, therefore, cannot establish a violation of the 14th Amendment beyond debate. And I want to talk about this thing about the procedures, because there's a few things that are going on here with respect to this, okay? The main issue here is whether or not he was provided evidence that he requested. But he didn't just request evidence. He wanted the evidence that was going to be used against him, okay? The case they cite for that is the Melnick case. But Melnick specifically recognized that he's only entitled to exculpatory evidence. And so he's not requesting exculpatory evidence. He's requesting the evidence that's going to be used to prosecute him. And so, therefore, under Melnick, he's not entitled to any of these things, any evidence at all. And also there was a security concern here. The reason why evidence was not provided, which in the disciplinary hearing and in the subsequent grievance appeals, they continually affirmed that this is a security. The reason why this evidence wasn't provided, and that's, again, different from Melnick, because in Melnick they said, hey, there was no security issue here at all, and therefore it wasn't provided. Just, Your Honor, because Crawley was provided all that Wilford requires also, he was given everything he was. He was provided notice of the hearing. He was provided an opportunity to call witnesses under the security concerns that are available. And he was given notice that he was given the copy of the decision that was supported by some evidence, which, therefore, he was entitled to do. Therefore, there is no case that talks about, first of all, there is no case that provides that people who aren't in the disinterrogative process, grievance responders are not, people who are pre-doing it are not. There is no case that says that these people are, can deprive somebody of due process. The disciplinary hearing members, they didn't deprive him because they provided all that they could within the constraints of the prison industries. And that has to be done here, Your Honor. You have to look at it from the prison industries. And I would like to reserve the rest of my time for rebuttal. Thank you, Your Honor.  Thank you, Mr. Davis.   Good morning. May it please the Court. Zoe Addis representing Apolli Dane Crawley. Nevada Department of Corrections officials found Mr. Crawley guilty of two disciplinary offenses without ever giving him access to the full evidence they relied on. As a result, Mr. Crawley did not know the basis for defendant's accusations and could not defend himself against their charges. When he attempted to do so, he was told repeatedly by defendants that his defenses were irrelevant to the charges against him, something that he had no way of knowing because he didn't know what evidence was being used against him. Counsel, counsel, can I interrupt you for one second? Can you explain to me why you think that Williams violated Crawley's due process rights here because he merely denied the grievance after the hearing itself? Absolutely, Your Honor, that is because Deputy Director Williams was able to provide Mr. Crawley with evidence that was used against him, and he failed to do so. And that goes to the fact that throughout the procedure, Mr. Crawley was not able to defend himself against the charges that were levied against him because he didn't know what those charges were in substance because he didn't have the evidence against him. That includes that the grievance process, when he was on, he asked Deputy Director Williams for the evidence against him and was not provided with that evidence. In Melnick, the defendants that were held liable to were asked for the evidence that was used against Melnick in order to find him guilty. They failed to provide it, and they were held liable for doing so. So in the first proceeding, what was he not provided with? He was not provided with what defendants have labeled sensitive evidence. We know that that includes phone calls that were recorded of Mr. Crawley's. We don't know if there's other evidence in there because we have not been given access to that evidence, but we do know that it includes those phone calls that they believe include Mr. Crawley referring to introducing contraband into the facility. And that is what the Williams did not provide? He did not provide that access to the sensitive evidence. And so Mr. Crawley was unable to review that sensitive evidence, and potentially there was content in that evidence that he would be able to provide an innocent explanation for if he was able to review it. Defendants relied on that information but did not give Mr. Crawley an opportunity to evaluate it to determine if there was an innocent explanation that he could provide that would show his own innocence. And there was not an explanation as to why it couldn't have been provided, like security? That's correct, Your Honor. Defendants have merely labeled the evidence as confidential. But Melnick is very clear that merely labeling is not sufficient. A logical foundation must be provided for why evidence needs to be held confidential. That's what the district court found that defendants had not done here, and that is why they granted summary judgment to my client. What about the heck issue? In terms of the heck issue, as you noted earlier, Your Honor, that this has been clearly forfeited by defendants. They did not raise it before my client was granted summary judgment, and they failed to raise it after until their reply brief. This is a classic instance of forfeiture, and defendants have provided no reason for why this Court should excuse that forfeiture. But on the merits, heck is very clear that there are two different kinds of challenges to the kind of deprivation that occurred here. One is a challenge to the process by which the deprivation occurred, and the second is a challenge to the deprivation or the sanction itself. That second kind of challenge is barred by heck, but that is not the kind of challenge Mr. Crawley has brought here. He has brought a challenge to the process by which his good time credits were revoked, and thus it is not heck-barred, and heck-barred is not on point because—  That one seems tougher, just because he seems to be claiming that there was actually maybe insufficient evidence against him on some of this. So it seems to be maybe more fundamental than just a mere process violation. I think if we compare this case to that of Balisok, we can see why this does not necessarily imply the invalidity of the sanctions. In Balisok, there were allegations of deceit and bias, and the Court found that that could not be cured through another hearing. There was no way for defendants to make out their case. Here, we can envision an instance in which the remedy that is afforded to Mr. Crawley is a new hearing, defendants do a rehearing of this process and find Mr. Crawley guilty once again, but give him access to the evidence against him so that he can defend himself, and there is some evidence in the record that supports a finding of guilt that the district court can evaluate. Thus, it is not necessarily implying the invalidity of the sanction because there could be a remedy that does not invalidate the sanction. Let me go back to Hebrard. I mean, how do you read this case? Because there was a forfeiture there, too, and there's language in the opinion that talks about a court being permitted. It also talks about a court being required. The first thing I'll note is that at 1006 in Hebrard, the Court is very clear that a heck is an affirmative offense that may be waived or forfeited. There, the Court determined that they would excuse the forfeiture, but they did so because they believed that Mr. Hebrard's underlying claims were not meritorious, so there would be no prejudice if they decided to waive or excuse the forfeiture. I mean, there's a footnote on that. I mean, it's definitely a possible distinction between this case. I don't know that we should read Hebrard necessarily as turning on that one point. And if we look at Washington, which is the case that they raised to say that they could bring this up sua sponte, they say that the PLRA requires dismissal where on the face of its complaint there is a heck bar. On the face of the complaint here, there is not a heck bar because, again, Mr. Crawley is challenging the process by which he was deprived of his good time credits, not the revocation itself. And as I've discussed on the merits of heck, that shows that there was not a heck bar on the face of the complaint, and thus there was not a sua sponte obligation to sua sponte dismiss this case, and we don't believe that the forfeiture should be excused. And going to the merits of what defendants are arguing, they say that they were only entitled to provide Mr. Crawley — that Mr. Crawley was only entitled to exculpatory evidence. But that runs headlong into this Court's holding in Melnick, in which the Court held that following from Wolfe, in which the Supreme Court said that individuals in a prison disciplinary context must be able to present a defense on their own behalf, that individuals must, in order to do so, have access to the evidence against them. If it was only exculpatory evidence, that holding wouldn't make sense because you don't need exculpatory evidence in order to present a defense on your own behalf. You need to understand what incriminating evidence the defendants in this case would have so that you can prepare a defense to those arguments. And so it's clearly not true from Melnick that only exculpatory evidence is what Mr. Crawley is entitled to. He is entitled to all the evidence that was used against him. And if we look at the recording of the second proceeding, this is labeled Exhibit F, and these are two exchanges, one beginning at 6 minutes and 35 seconds, the other at 8 minutes and 20. Mr. Crawley repeatedly attempts to say, you know, this piece of mail wasn't — this piece of mail wasn't incriminating, this piece of mail wasn't incriminating, and defendants respond, well, that's irrelevant to the charges. You don't know what we're talking about. But he had no way of knowing what they were talking about, so he couldn't bring challenges to those specific pieces of evidence because he didn't know what that evidence was. He had no way of presenting a defense on his own behalf. This is a classic instance of why Melnick requires all the evidence to be given to individuals so that they can present a defense on their own. But this is why I'm wondering if there's a — and I know your position is you win on both, but there seems to maybe be a difference between the first and the second one. I mean, the first one, I think it's fair to say he had a greater idea of what was going on. He was deprived of some information, he claims, but it seems it's hard to argue in the first one that he didn't have an understanding of what this was about. I think what we can say, Your Honor, is that he didn't have an understanding of what the sensitive evidence was. He didn't know what phone conversations defendants were using to say that he was discussing bringing contraband into the facility. He wasn't able to provide an innocent explanation for those conversations because he didn't know, in fact, what conversations were being discussed at all. I see that my — Well, you have another two minutes. Oh, I have four minutes. Perfect. Yeah. Let me ask you. I wanted to ask you about Suey Holloway and Robeson, and so I think the argument is that they were actually involved in depriving your client of due process. So should they still be in this case? They should, Your Honor. And I want to start by saying that there are two defendants that the defendants have not challenged their personal participation as to. That's Lieutenant Ashcraft with respect to both hearings, and then that's Officer Suey with respect to the second hearing. But the other individuals here also participated in the due process violation because they, too, failed to provide Mr. Crawley with the evidence that was being used against him. In their notice of charges, which failed to provide a full understanding to Mr. Crawley of what evidence was being used to find him guilty of these charges or to understand why they believed that these charges were valid. In addition, Officer Robeson was explicitly asked for the evidence that was being used against Mr. Crawley, and he failed to provide it, the same as the officers in Melnick who were held responsible there did. They refused to provide the evidence when it was asked for. And qualified immunity is also not an argument that defendants can rely on here. That is because the right to have access to the evidence is clearly established by this Court's decision in Melnick, in which the Court held that all evidence that is used that is relied upon to find an individual guilty of a disciplinary proceeding must be given to an individual. Not only was that clearly established by Melnick, but in Melnick they said that there was no qualified immunity that could be granted to defendants because the right was already clearly established at that point. In addition, with respect to our sum evidence allegation in the second proceeding, that right was also clearly established by the Supreme Court's decision in Hill, in which the Court was very clear that some evidence must support a guilty verdict in a prison disciplinary context. What are you trying to get out of this? Do you want restoration of credits or do you want new proceedings? What are you asking for? We are asking for damages, Your Honor, and we are asking for a new hearing or some other kind of equitable relief, not the restoration of the good time credits itself, but a proceeding that comports with due process. Okay. Let me see if my colleagues have other questions for you. Okay. Thank you very much for your presentation. Mr. Davis. Thank you, Your Honor. You know, I want to go to the ‑‑ because the last statement was pretty surprising to me, because if you go to the last page of the complaint, it says specifically what he's asking for, right? And one of the things he's specifically asking for is the restoration of those good time credits. So, you know, the only reason they're saying that now, that they're not asking for the restoration of good time credits, I think is obvious. It's because they know if they do, then it's barred by a heck, and then the case should be dismissed. And so, I think that's where we are, Your Honor. Well, he also asked for damages, right? Yeah, but the thing is, is the fact that they're asking for damages doesn't get them over the heck bar. They're always asking for damages in 1983. If asking for damages ‑‑ No, no, I mean, but you were saying ‑‑ I thought you were arguing that he was only asking for good time credits. No, sorry, Your Honor. I'm just saying that just because he's asking for this ‑‑ But the one thing I was sort of curious about is that the district court, and I'm sure I may have misread it, seemed to be focusing on damages and not the equitable relief. Is that your reading of it? I ‑‑ Your Honor, I ‑‑ You probably have a better reading of that from me, so I would defer to Your Honor with respect to that. With respect to the issue of exculpatory evidence, I'm a little bit confused about this, because I don't think ‑‑ How does he prove his innocence unless there's exculpatory evidence? So, unless the evidence is exculpatory, how does he do it? So, that's why the reason why you only have to do it. And if you actually look ‑‑ I think his position is he needs to be able to defend himself, so if the contention is that this is inculpatory evidence, he's saying, I need to know what that is to be able to respond to it. And the problem you have with that side of the thing is you have security concerns in prisons that you just do not have in the outside world. That's why the Supreme Court in Wolf recognized, hey, you know, prisoners just don't have the same type of due process rights outside or inside of prisons that you do outside. There's huge security concerns. For example, let's go for the telephone conversations. Those things are confidential conversations that he could use to go against other prisoners if that information was disclosed. The issue about who decides whether or not it is, is not an issue of law in this case, because this Court has repeatedly held. And the Supreme Court, especially if you look at the concurrence ‑‑ I'm going to go with the concurrence in one of the cases, too. If you look at the concurrence in Wolf, it talks about it, it says, hey, you know, the people who do it, the prison people can do this. As long as they've gone through that process and had to review the evidence and said, hey, we've reached this conclusion that there's security concerns involved, that's enough. And they've done it in camera. There's repeated evidence in this case that they have done that, reviewed it in camera, and therefore, that's the case. With respect to the process claims about the, you know, the procedure, you know, the Supreme Court has repeatedly held that the procedures, depriving somebody of liberty, the only way you can deprive it is you deprive them of life liberty. I mean, these people who are providing the notice of charges, who are doing all these other things, how do they know what's going to happen at the end? I mean, the only people who have the authority to deprive somebody of liberty is the hearing officers. I mean, if you take it, for example, and also the grievance responders, for example, it would be ‑‑ it would be insane, for example, to say, hey, this Court deprived the party of due process because the Supreme Court came to a different conclusion as you did. You didn't deprive them because you provided the process. That's what they're doing. They provided the process.  I think we have your argument. Thank you very much, Mr. Davis. Appreciate it. Thank both counsel for the briefing and argument. Mr. Wolfman, thank your clinic for your work in the case. The case is submitted.
judges: THOMAS, BRESS, MENDOZA